# EXHIBIT A

GIN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RUDY GUILLEN, an individual, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 4:15-cv-849 |
| v. | § | |
| | § | |
| COUNTRYWIDE HOME LOANS, INC. | § | |
| N/K/A BANK OF AMERICA, N.A.; U.S. | § | |
| BANK, N.A. AS TRUSTEE FO RTHE | § | |
| TRUMAN 2013 SC3 TITLE TRUST; | § | |
| RUSHMORE LOAN MANAGEMENT | § | |
| SERVICES, LLC; AND MORTGAGE | § | |
| ELECTRONIC REGISTRATION | § | |
| SYSTEMS, INC. AKA "MERS", | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF GLORIA A. ROCHA

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the following statements are true and correct:

1. My name is GLORIA A. ROCHA, I am over the age of 18 years, have never been convicted of a crime, and am fully competent to make this declaration. I have personal knowledge of all the facts stated herein, and all statements of fact contained herein are true and correct.

2. I hold a position as an ASSISTANT VICE PRESIDENT at Rushmore Loan Management Services, LLC, Inc. ("Rushmore"), Defendant in the current lawsuit. In the regular performance of my job functions at Rushmore, I am familiar with the business records maintained by Rushmore for the purpose of servicing mortgage loans, collecting payments and pursuing any delinquencies (the "Servicing Records"). The Servicing Records typically include electronic data compilations and imaged documents pertaining to the loans it services. Based on my

knowledge of the processes by which they are created and maintained, the Servicing Records were made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the ordinary course of the business activity regularly conducted by Rushmore.  It is the regular practice of Rushmore to make and update its Servicing Records.

3.   On or about April 3, 2007, Rudy Guillen ("Guillen") executed a Adjustable Rate Note (the "Note") for $164,160.00 payable to America's Wholesale Lender ("America's Wholesale"). (Exh. A-1).  The Note was secured by the property commonly known as 13334 Lake Passage Lane, Houston, Texas 77044 (the "Property"). Concurrently with execution of the Note, Guillen executed a Deed of Trust Instrument securing the repayment of the Note with the Property (the "Deed of Trust").  (Exh. A-2).  The Note and Deed of Trust shall collectively be referred to as the "Loan."

4.   The original beneficiary of the Deed of Trust was Mortgage Electronic Registration Systems, Inc. ("MERS").  The Deed of Trust was granted, sold, assigned, transferred, and conveyed by MERS, solely as nominee for America's Wholesale, to the US Bank National Association as Legal Title Trustee for Truman 2013 SC3 Title Trust ("US Bank").   This assignment to US Bank is reflected in that certain Assignment of Deed of Trust dated March 24, 2014 and filed in the real property records of Harris County, Texas. (Exh. A-3.)  US Bank is the current owner of the Note and beneficiary of the Deed of Trust.    Rushmore is the current mortgage servicer for US Bank.

5.   On December 31, 2012, Guillen executed a Loan Modification Agreement as an amendment and supplement to his original loan agreement.  (Exh. A-4.).  The Loan Modification Agreement was countersigned by Stewart Lender Servicers, Inc., attorney in fact for US Bank's

prior mortgage servicer, Bank of America, N.A.   (*Id.*)   As part of the Loan Modification Agreement, US Bank agreed to forgave $85,267.34 in principal and to deem the account current. (*Id.*)   US Bank performed its obligation under the Modification Agreement by forgiving $85,267.34 in principal and deeming the loan account current.   (Exh. A-5, A-6.)   Guillen failed to tender his payments under the modification agreement, when due.   (*Id.*)   The loan is currently due for the January 1, 2013 payment and all subsequent payments.   (*Id.*)

6.   Attached hereto is Exhibit A-1 which is from the business records of Rushmore. These records are kept by Rushmore in the regular course of business, and it is the regular course of business of Rushmore for an employee or representative of Rushmore, with knowledge of the act, event, condition, opinion, or diagnosis, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.  These records are also identified as exhibits to this declaration and are indicated below:

A-1.   Note dated April 3, 2007;

A-2.   Deed of Trust dated April 3, 2007;

A-3.   Assignment of Deed of Trust dated March 24, 2014 and recorded in the real property records of Harris County, Texas as document number 20140301694.

A-4.   Modification Agreement executed December 31, 2012.

A-5.   Bank of America, N.A. payment history.

A-6.   Rushmore payment history.

Signed this  9  day of June, 2015.

US Bank National Association as Legal Title Trustee for Truman 2013 SC3 Title Trust, Rushmore Loan Management Services LLC, its appointed attorney in fact
Printed Name: GLORIA A. ROCHA,
ASSISTANT VICE PRESIDENT

# EXHIBIT A-1

LOAN #: ███████

# ADJUSTABLE RATE NOTE
### (LIBOR Index – Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| APRIL 03, 2007 | HOUSTON | TEXAS |
|---|---|---|
| [Date] | [City] | [State] |

13334 LAKE PASSAGE LANE, HOUSTON, TX 77044-5578
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 164,160.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  10.080 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the  first      day of each month beginning on
JUNE 01, 2007       . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   MAY 01, 2037       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,450.34      . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the  first        day of MAY, 2009      , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* . The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN                percentage point(s) (  7.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

**TEXAS ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family**
● BC - ARM Note
2D151-TX (06/06)(d)                               Page 1 of 3



IT IS HEREBY CERTIFIED THAT THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL.

X_____



LOAN #  ███████

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.580 % or less than 10.080 % Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF percentage point(s)( 1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 17.080 % or less than 10.080 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this note.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

[ ] I may prepay this Note in full at any time without penalty.

[X] If within the first TWENTY FOUR months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original principal amount of this loan, I will pay a prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original principal amount of the loan.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a Partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

● BC - ARM Note
2D151-TX (06/06)                              Page 2 of 3

LOAN # : ▮▮▮▮

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**
**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____    _____
RUDY GUILLEN                                                                    -Borrower

_____
                                                                                           -Borrower

_____
                                                                                           -Borrower

_____
                                                                                           -Borrower

*[Sign Original Only]*

LOAN #: ▓▓▓▓▓▓

# ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

APRIL 03, 2007                     HOUSTON                          TEXAS
[Date]                             [City]                           [State]

13334 LAKE PASSAGE LANE, HOUSTON, TX 77044-5578
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 164,160.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER                                                        .
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   10.080 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay Principal and interest by making a payment every month.
I will make my monthly payment on the  first        day of each month beginning on
JUNE 01, 2007          . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   MAY 01, 2037         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,450.34          . This amount may change.
### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the  first        day of MAY, 2009         , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
### (C) Calculation of Changes
Before   each   Change   Date,   the   Note   Holder   will   calculate   my   new   interest   rate   by   adding
SEVEN                     percentage point(s) (    7.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

TEXAS ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family
● BC - ARM Note
2D151-TX (06/06)(d)                                    Page 1 of 3





...hereby certify this instrument to be
a true and correct copy of the original
CHICAGO TITLE INSURANCE COMPANY

BY: _____

LOAN #:

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11.580   % or less than   10.080   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE  &  ONE-HALF           percentage point(s) (   1.500   %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than   17.080   % or less than   10.080   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this note.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. **My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.**

☐ I may prepay this Note in full at any time without penalty.

☒ **If within the first TWENTY FOUR          months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original principal amount of this loan, I will pay a prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original principal amount of the loan.**

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a Partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN           calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

LOAN #: ████████

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**
**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____
RUDY GUILLEN                                                           -Borrower

_____
                                                                       -Borrower

_____
                                                                       -Borrower

_____
                                                                       -Borrower

*[Sign Original Only]*

LOAN #: ███████

# ADJUSTABLE RATE NOTE
## (LIBOR Index – Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| APRIL 03, 2007 | HOUSTON | TEXAS |
|---|---|---|
| [Date] | [City] | [State] |

13334 LAKE PASSAGE LANE, HOUSTON, TX 77044-5578
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 164,160.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   10.080 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay Principal and interest by making a payment every month.
I will make my monthly payment on the  first            day of each month beginning on
JUNE 01, 2007        . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   MAY 01, 2037        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 1,450.34        . This amount may change.
### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the  first        day of MAY, 2009        , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* . The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN         percentage point(s) (    7.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

TEXAS ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family
● BC - ARM Note
2D151-TX (06/06)(d)                                      Page 1 of 3





We hereby certify this Instrument to be a true and certified copy of the original
CHICAGO TITLE INSURANCE COMPANY

BY:

LOAN #: ██████████

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11.580   % or less than   10.080   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF            percentage point(s) (   1.500   %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than   17.080   % or less than   10.080   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this note.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

☐ I may prepay this Note in full at any time without penalty.
☒ If within the first TWENTY FOUR        months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original principal amount of this loan, I will pay a prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original principal amount of the loan.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a Partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

LOAN #: ███████

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**
**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____   -Borrower
RUDY  GUILLEN

_____   -Borrower

_____   -Borrower

_____   -Borrower

*[Sign Original Only]*

04/04/2007 08:42 FAX  7138710822          CHICAGO TITLE WEST LOOP                        ☒010/036

LOAN #: ▮▮▮▮▮▮

# ADJUSTABLE RATE NOTE
### (LIBOR Index – Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

APRIL 03, 2007                          HOUSTON                                    TEXAS
**[Date]**                                **[City]**                                **[State]**

13334 LAKE PASSAGE LANE, HOUSTON, TX 77044-5578
**[Property Address]**

## 1. BORROWER'S PROMISE TO PAY
    In return for a loan that I have received, I promise to pay U.S. $ 164,160.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.
    I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST
    Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    10.080 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
    The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
    **(A) Time and Place of Payments**
    I will pay Principal and interest by making a payment every month.
    I will make my monthly payment on the  **first**          day of each month beginning on
JUNE 01, 2007          . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   MAY 01, 2037          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.
    **(B) Amount of My Initial Monthly Payments**
    Each of my initial monthly payments will be in the amount of U.S. $ 1,450.34          . This amount may change.
    **(C) Monthly Payment Changes**
    Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
    **(A) Change Dates**
    The interest rate I will pay may change on the  **first**          day of MAY, 2009          , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
    **(B) The Index**
    Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
    If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
    **(C) Calculation of Changes**
    Before each Change Date, the Note Holder will calculate my new interest rate by adding
SEVEN                          percentage point(s) (    7.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

TEXAS ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family
● BC - ARM Note
2D151-TX (06/06)(d)                          Page 1 of 3





LOAN #: ██████

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than   11.580 % or less than   10.080   %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF          percentage point(s) (   1.500   %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than   17.080 % or less than   10.080   %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this note.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation. The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

☐ I may prepay this Note in full at any time without penalty.
☒ If within the first TWENTY FOUR          months after the execution of the Note, I make any prepayment(s) within any 12-month period, the total of which exceeds 20 percent (20%) of the original principal amount of this loan, I will pay a prepayment penalty in an amount equal to the payment of six (6) months' advance interest on the amount by which the total of my prepayment(s) within that 12-month period exceeds 20 percent (20%) of the original principal amount of the loan.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a Partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

LOAN # : 

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**
**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____

RUDY GUILLEN                                                              -Borrower

_____                                   -Borrower

_____                                   -Borrower

_____                                   -Borrower

*[Sign Original Only]*

● BC - ARM Note
2D151-TX (08/06)                          Page 3 of 3

# EXHIBIT A-2

Grantor:
PERRY HOMES, a Joint Venture
By:   Perry-Houston Interests, Ltd.
         a Texas limited partnership
         as the Managing Joint Venturer

By:  PH Financial L.L.C.
        a Texas limited liability company,
        as the General Partner

By: _____
Name:   **JOHN R. KRUGH**
Title:   **SENIOR VICE PRESIDENT**

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
    I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me; and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

**APR 1 1 2007**



COUNTY CLERK
HARRIS COUNTY, TEXAS

THE STATE OF TEXAS
COUNTY OF HARRIS

    This instrument was acknowledged before me on this  3   day of April 2007
By _____ , the  Sr. Vice President
Of PH Financial L.L.C.,  A Texas limited liability company, as the General Partner of
Perry-Houston Interests, Ltd., a Texas limited partnership, as the Managing Joint
Venturer of PERRY HOMES, a Joint Venture.

_____
Notary Public in and for the State of Texas

Commission expires: _____

KAY JOLLIFF
Notary Public
STATE OF TEXAS
My Comm. Exp.: 10-28-2009

FILED
2007 APR 11  PM 2: 08

COUNTY CLERK
HARRIS COUNTY, TEXAS

RP 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

Loan No.: _____

General Warranty Deed with Vendor's Lien (Texas)
—THE COMPLIANCE SOURCE, INC.—                    Page 3 of 3                         05000TX 07/00 Rev. 10/04
www.compliancesource.com                                                                              ©2004, The Compliance Source, Inc.

HOLD FOR
CHICAGO TITLE
GF 3780020
BDH/NL

20070219284
04/11/2007  RP2  $112.00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

————————————— [Space Above This Line For Recording Data] —————————————

[Doc ID #]

# DEED OF TRUST

MIN

2007 APR 11  PM 2: 08
COUNTY CLERK
HARRIS COUNTY, TEXAS
FILED

RP 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

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated     APRIL 03, 2007     , together with all Riders to this document.

**(B) "Borrower"** is

RUDY GUILLEN, A SINGLE PERSON

Borrower is the grantor under this Security Instrument.

TEXAS-Modified Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - 3044 1/01
● Deed of Trust with MERS - TEXAS
1E631-TX (03/06)(d/i)                    Page 1 of 16




DOC ID #: ███████████

**(C) "Lender"** is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK                              . Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
Lender includes any holder of the Note who is entitled to receive payments under the Note.

**(D) "Trustee"** is
CTC REAL ESTATE SERVICES
Trustee's address is
400 COUNTRYWIDE WAY, MSN SV-88 SIMI VALLEY, CA 93065- ,

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is a beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated APRIL 03, 2007                  . The Note states that Borrower owes Lender
ONE HUNDRED SIXTY FOUR THOUSAND ONE HUNDRED SIXTY and 00/100

Dollars (U.S. $ 164,160.00                  ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than MAY 01, 2037                  .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

● **Deed of Trust with MERS - TEXAS**
1E631-TX (03/06)                    Page 2 of 16

DOC ID #: ███████████

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

              COUNTY            of            HARRIS        :
        [Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:                                    which currently has the address of
                    13334 LAKE PASSAGE LANE, HOUSTON       ,
                        [Street/City]
Texas 77044-5578 ("Property Address"):
        [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

GF# ████



**LEGAL DESCRIPTION**

Lot Twelve (12), Block Two (2) of Lakeshore Sec. 2, and addition in Harris County,
Texas, according to the map or plat thereof, recorded in under Film Code No. 597018
Map Records of Harris County, Texas.

DOC ID #: ████████████

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance

DOC ID #: █████████

required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

DOC ID #: ███████

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and

DOC ID #: ███████████

restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of

DOC ID #: ■■■■■■■■

the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

DOC ID # ████████████

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether

DOC ID #: ▮▮▮▮▮▮▮▮▮▮

or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance

DOC ID #: ███████████

of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees

DOC ID #: ███████████

incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

DOC ID #: ████████████

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.**

DOC ID #: ███████████

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property; Acknowledgment Regarding Manufactured Home Conversion Lien. Check box as applicable:**

[X] **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

[ ] **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

[ ] **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

DOC ID # : ███████████

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

☐ **Acknowledgment Regarding Manufactured Home Conversion Lien.**

Owners acknowledge and agree that, to the extent permitted by law, the liens granted or created by this lien document in and to the Property and the manufactured home include, without limitation, a conversion lien under Texas Constitution, Article XVI, §50(a)(8), and, as applicable, Chapter 63 of the Texas Property Code.

**28. Loan Not a Home Equity Loan. The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
RUDY GUILLEN                               -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

● Deed of Trust with MERS - TEXAS
1E631-TX (03/06)                    **Page 15 of 16**

LOAN #: ███████

State of _Texas._

County of _Harris_

Subscribed and sworn to (or affirmed) before me on this __3__ day of __April  2007__ , by

_____Rudy Guillen_____ , personally known to me or proved to me on the basis of

satisfactory evidence to be the person who appeared before me.

_____

(Notary Public)

THELMA KEYES
MY COMMISSION EXPIRES
October 29, 2007

RP 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

● Identity Affidavit
1E671-US (11/06)                              Page 2 of 2

DOC ID #:

**STATE OF TEXAS**
County of

Before me _Thelma Keyes_ _____ on this day personally appeared
_Rudy Guillen_ _____ known to me
(or proved to me on the oath of _____ or through _picture I.D._ )
to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she/they
executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this _3_ day of _April 2007_ .

(Seal)

Notary Public

My Commission Expires:



THELMA KEYES
MY COMMISSION EXPIRES
October 29, 2007

● Deed of Trust with MERS - TEXAS
1E631-TX (03/06)                    Page 16 of 16

DOC ID #:

# ADJUSTABLE RATE RIDER
(LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this THIRD                day of
APRIL, 2007       , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the
same date given by the undersigned (the "Borrower") to secure Borrower's Note to
AMERICA'S WHOLESALE LENDER

(the "Lender") of the same date and covering the property described in the Security Instrument and
located at:

13334 LAKE PASSAGE LANE, HOUSTON, TX 77044-5578

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE
TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX** - Single Family
CONV
● BC - ARM Rider
1U193-US (12/05)(d)                    Page 1 of 4




DOC ID #: ███████████

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of   10.080 %.   The   Note   provides   for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the **first**                 day of **MAY, 2009**                , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each  Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable  information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SEVEN**                          percentage point(s) (     7.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the  unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than   11.580 % or less than    10.080 %. Thereafter, my interest rate will never be increased or decreased on any single  Change Date by more than **ONE & ONE-HALF** percentage point(s) (     1.500 %) from the rate of interest I have been paying for the preceding six  months. My  interest  rate  will  never  be  greater  than     17.080   % or less than    10.080 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly  payment beginning on the first monthly payment date after the Change Date until the amount of my monthly  payment changes again.

CONV
● BC - ARM Rider
1U193-US (12/05)                    Page 2 of 4

DOC ID #: ████████████████

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

CONV
● BC - ARM Rider
1U193-US (12/05)                    Page 3 of 4

DOC ID #: ███████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)

RUDY GUILLEN                                              - Borrower

_____ (Seal)

                                                         - Borrower

_____ (Seal)

                                                         - Borrower

_____ (Seal)

                                                         - Borrower

CONV
● BC - ARM Rider
1U193-US (12/05)                 Page 4 of 4

# PLANNED UNIT DEVELOPMENT RIDER

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
ERIN COX

[Doc ID #]

THIS PLANNED UNIT DEVELOPMENT RIDER is made this THIRD                    day of
APRIL, 2007          , and is incorporated into and shall be deemed to amend and supplement
the, Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by
the undersigned (the "Borrower") to secure Borrower's Note to
AMERICA'S WHOLESALE LENDER

(the "Lender") of the same date and covering the Property described in the Security Instrument and
located at:

13334 LAKE PASSAGE LANE
HOUSTON, TX 77044-5578
[Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT 
⊗-7R (0405)      CHL (06/04)(d)        Page 1 of 3          Initials:_____
VMP Mortgage Solutions, Inc. (800)521-7291            Form 3150 1/01



DOC ID #: ████████

other such parcels and certain common areas and facilities, as described in
THE COVENANTS, CONDITIONS, AND RESTRICTIONS FILED OF RECORD
THAT AFFECT THE PROPERTY

(the "Declaration"). The Property is a part of a planned unit development known as
LAKESHORE

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the

-7R (0405)    CHL (06/04)         Page 2 of 3          Initials: _____    Form 3150 1/01

DOC ID #: ▮▮▮▮▮▮▮▮▮

express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
RUDY GUILLEN                            - Borrower

_____ (Seal)
                                        - Borrower

_____ (Seal)
                                        - Borrower

_____ (Seal)
                                        - Borrower

ANY PROVISION HEREIN WHICH RESTRICTS THE SALE, RENTAL, OR USE OF THE DESCRIBED REAL PROPERTY BECAUSE OF COLOR OR RACE IS INVALID AND UNENFORCEABLE UNDER FEDERAL LAW.
THE STATE OF TEXAS
COUNTY OF HARRIS
   I hereby certify that this instrument was FILED in File Number Sequence on the date and at the time stamped hereon by me, and was duly RECORDED, in the Official Public Records of Real Property of Harris County, Texas on

APR 1 1 2007



COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT A-3

20140301694
07/11/2014   ER   $24.00

ASSGN
C

This space for Recorder's use

# ASSIGNMENT OF DEED OF TRUST



DocID#

Property Address:
**13334 Lake Passage Ln**
**Houston, TX 77044-5578**
TX0-ADT  29031098    3/20 2014  RM0120A

Recording Requested By:
**Bank of America**
Prepared By:
**Ralph Flores**
**800-444-4302**
**101 S. Marengo Ave.**
**Pasadena, CA 91101**

When recorded mail to:
**Rushmore Loan**
**Management Services LLC**
**Attn: Ezra Leyton**
**15480 Laguna Canyon**
**Drive, Ste 100**
**Irvine, CA 92618**

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is **1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063** does hereby grant, sell, assign, transfer and convey unto **US BANK NA AS LEGAL TITLE TRUSTEE FOR TRUMAN 2013 SC3 TITLE TRUST** whose address is **TRUMAN 2013 SC3, LLC, 200 BUSINESS PARK DRIVE SUITE 103, ARMONK, NY 10504** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

**2EE**

Beneficiary:              **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS**
Borrower(s):             **RUDY GUILLEN, A SINGLE PERSON**
Original Trustee:       **CTC REAL ESTATE SERVICES**
Date of Deed of Trust:  **4/3/2007**
Original Loan Amount:   **$164,160.00**

Recorded in **Harris County**, TX on: 4/11/2007, book RP 042-61, page 1508 and instrument number 20070219284

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
_____MAR 2 4 2014_____

**BANK OF AMERICA, N.A.**                                  **1OR**

By: _____
        Luis Roldan
        Assistant Vice President


**EXHIBIT**
**L**

ER 058 - 77 - 0032

State of **California**
County of **Los Angeles**

On ___MAR 2 4 2014___ before me, ___**Evette Ohanian**___, Notary Public, personally
appeared ___**Luis Roldan**___, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: ___**Evette Ohanian**___      (Seal)
My Commission Expires: ___DEC 2 7 2015___

EVETTE OHANIAN
COMM. 1961990
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Dec. 27, 2015

ER 058 - 77 - 0033

DocID#

# EXHIBIT "A"

LOT TWELVE (12), BLOCK TWO (2) OF LAKESHORE SEC. 2, AND ADDITION IN HARRIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF, RECORDED IN UNDER FILM CODE NO. 597018 MAP RECORDS OF HARRIS COUNTY, TEXAS.

D

ER 058 - 77 - 0034

ER 058 - 77 - 0035

20140301694
# Pages 4
07/11/2014    08:04:22 AM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees 24.00

**RECORDERS MEMORANDUM**
**This instrument was received and recorded electronically**
**and any blackouts, additions or changes were present**
**at the time the instrument was filed and recorded.**

**Any provision herein which restricts the sale, rental, or**
**use of the described real property because of color or**
**race is invalid and unenforceable under federal law.**
**THE STATE OF TEXAS**
**COUNTY OF HARRIS**
**I hereby certify that this instrument was FILED in**
**File Number Sequence on the date and at the time stamped**
**hereon by me; and was duly RECORDED in the Official**
**Public Records of Real Property of Harris County, Texas.**

*Stan Stanart*
COUNTY CLERK,
HARRIS COUNTY, TEXAS

# EXHIBIT A-4

**Modification Agreement
(Servicer Copy)**

Bank of America 〰 Home Loans

RECORDING REQUESTED BY:
Bank of America, N.A.
Attn Home Retention Division: CA6-919-02-46
400 NATIONAL WAY
Simi Valley, CA 93065

Loan #: ███████████

BAC MODIFICATION AGREEMENT – Single Family/DOJ with Forgiveness
(C3_3477 rev. 7/12) Bank of America, N.A.                          *(Page 1 of 1 pages)*



C3_3477

**This document was prepared by**
Home Retention Services, Inc.,
Modifications Department
9700 Bissonnet Street
Suite 1500
Houston, TX 77036
1.877.422.1761

_____ *SPACE ABOVE THIS LINE FOR RECORDER'S USE* _____

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), effective on the date set forth below, between RUDY GUILLEN, (the "Borrower(s)") and Bank of America, N.A. ("Lender") amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 03 day of April, 2007 and in the amount of $164,160.00, and (2) the Note bearing the same date as, and secured by, the Security Instrument (the "Note") which covers the real and personal property described in the Security Instrument and defined therein as in the "Property", located at 13334 LAKE PASSAGE LANE, HOUSTON, TX 77044.

If my representations in Section 1 below continue to be true in all material respects, then this Modification Agreement ("Agreement") will, as set forth in Section 3 below, amend and supplement (1) Security Instrument on the Property and (2) the Note secured by the Security Instrument, and any previous modifications to the Security Instrument and/or Note. The Security Instrument and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined here have the meaning given to them in the Loan Documents.

I have received three copies of this Agreement. After I sign and return two copies of this Agreement to Lender, I will retain the other copy for my records. This Agreement will not take effect unless the preconditions set forth in Section 2 below have been satisfied.

1.     **My Representations and Covenants**. I certify, represent to Lender, covenant and agree:

BAC MODIFICATION AGREEMENT – Single Family/DOJ with Forgiveness
(C3_3477 rev. 7/12) Bank of America, N.A.                    (Page 1 of 10 pages)



C3_3477

I am experiencing a financial hardship, and as a result, (1) I am in default under the Loan Documents or my default is imminent, and (2) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.

A.  The property is currently occupied and there has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow.

B.  I have provided documentation for **all** income that I receive that I am required to disclose, and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for this Loan Modification ("Modification").

C.  Under penalty of perjury, all documents and information that I (or any third party on my behalf) have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Modification, are true and correct to the best of my information and belief.

D.  I have made all payments required under a trial period plan or loan workout plan.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.  If prior to the Modification Effective Date as set forth in Section 3 below, Lender determines that any of my representations in Section 1 above are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, Lender will have all of the rights and remedies provided by the Loan Documents; and

B.  I understand that the Loan Documents will not be modified unless and until (1) I return a signed and notarized (if required) copy of this Agreement to Lender, (2) the Lender accepts this Agreement by signing it, and (3) the Modification Effective Date (as defined in Section 3 below) has occurred.

C.  I acknowledge that I have been advised that I am eligible for evaluation for a modification under the U.S. Treasury Department's Home Affordable Modification Program in addition to this Modification, and that I have voluntarily elected to proceed with this Modification after being advised of the benefits of both programs.

BAC MODIFICATION AGREEMENT – Single Family/DOJ with Forgiveness
(C3_3477 rev. 7/12) Bank of America, N.A.                    (Page 3 of 10 pages)



C3_3477

**3.** **The Modification.** If all of my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 above have been met, the Loan Documents will automatically become modified on January 01, 2013 (the "Modification Effective Date").

    A.    As part of this Modification, I agree that all amounts and arrearages that are or will be past due as of the Modification Effective Date, including unpaid and deferred interest, fees, charges, escrow advances, and other costs, but excluding unpaid late charges, (collectively "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan, will be added to the current principal balance of the Note. This combined principal balance will be $245,067.34 (the "Combined Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement unless those amounts are either deferred as non-interest bearing or forgiven as specified in this Agreement.

    B.    $85,267.34 of the Combined Principal Balance is hereby permanently forgiven, and I understand that I will no longer be responsible for repayment of such amount to Lender. I further acknowledge that Lender may be required to report the amount of principal forgiveness to the IRS and that any tax liability arising out of that forgiveness shall be my responsibility. I further acknowledge that Lender has recommended that I consult my own tax advisor to determine how this forgiveness impacts my personal situation.

    C.    As of the Modification Effective Date the principal balance of the loan that remains due and payable is $159,800.00 (the "New Principal Balance").

    D.    Interest at the rate of 8.830% will begin to accrue on the New Principal Balance as of December 01, 2012 and the first new monthly payment on the New Principal Balance will be due on January 01, 2013. My payment schedule for the modified Loan is as follows:

BAC MODIFICATION AGREEMENT – Single Family/DOJ with Forgiveness
(C3_3477 rev. 7/12) Bank of America, N.A.        (Page 1 of 10 pages)



C3_3477

| Months | Interest Rate | Type of Payment | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On |
|--------|---------------|-----------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|
| 293 | 8.830% | Principal and Interest | $1,331.22 | $914.49 May adjust periodically | $2,245.71 May adjust periodically | 01/01/2013 |

   * If escrow payments are collected by Lender, Lender may adjust such payments periodically in accordance with applicable law.  Therefore, my total monthly payment may change accordingly.

The terms in this Section 3.D. supersede any provisions to the contrary in the Loan Documents, and previous loan modifications including (but not limited to) provisions for an adjustable or interest-only rate.

E.     I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

**4.**    **Additional Agreements**. Lender and I agree to the following:

A.     All persons, or their authorized representative(s), who signed the Loan Documents have signed this Agreement, unless (1) a borrower or co-borrower is deceased; (2) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, meaning that the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (3) Lender has waived this requirement in writing. This Agreement may be executed in separate counterparts, each of which shall be deemed an original.



B.    This Agreement supersedes the terms of any modification, forbearance, trial period plan, or loan workout plan that I previously entered into with Lender.

C.    I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Loan Documents, including my agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments, the amount of which may periodically change over the term of my Loan.

D.    The Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E.    All terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect. Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. Except as otherwise specifically provided in, and as expressly modified by, this Agreement, Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F.    I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items". I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.F. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and

BAC MODIFICATION AGREEMENT – Single Family/DOJ with Forgiveness
(C3_3477 rev. 7/12) Bank of America, N.A.          (Page 6 of 10 pages)



agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.F.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

G.   On and after the Modification Effective Date, and notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, Lender shall not exercise this option if state or federal law, rules, or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Security Instrument. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand.

H.   On and after the Modification Effective Date, Lender will allow the transfer and assumption of the Loan, including this Agreement, only to a transferee of my property as permitted under the Garn-St Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.   On and after the Modification Effective Date, any provision in the Note (or in any addendum or amendment to the Note) that allowed for the assessment of a penalty for



full or partial prepayment of the Note, is null and void.

J.  I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by Lender's procedures to ensure that the modified mortgage loan is in first-lien position and/or is fully enforceable upon modification. Under any circumstance and not withstanding anything else to the contrary in this Agreement, if Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void. I will allow Lender to attach an Exhibit to this Loan Modification that will include a Legal Description, recording information of the original security instrument, and any other relevant information required by a County Clerk's Office to allow for recording if and when recording becomes necessary for Lender.

K.  I will execute such other documents as may be reasonably necessary either to (1) consummate the terms and conditions of this Agreement; or (2) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. If I elect not to sign any such correction documents, the terms of the original Loan Documents, or the most recent modified terms currently in effect, shall, at Lender's sole option, continue in full force, and the terms of the original Loan Documents, or the most recent modified terms currently in effect, will not be modified by this Agreement.

L.  Any optional product(s) I may have purchased after the closing of my Loan, the cost for which I agreed to have added to my Total Monthly Payment, will (1) remain in force as long as I add the amount due and owing to my Total Monthly Payment each month and (2) continue to be governed by the terms of the documents the provider of the optional product delivered to me ("Governing Documents"), unless I (a) notify the provider of the optional product of my request to cancel; or (b) fail to pay any and all amounts payable when due, at which time the optional product may terminate as provided under the Governing Documents. If I have questions about any optional product(s) I may have purchased, I should contact Bank of America, N.A.

M.  I agree and consent to the disclosure of my personal information and the terms of this Modification Agreement by Lender or its agents to (a) governmental authorities, including the U.S. Department of the Treasury and Department of Justice, and their agents, (b) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services this Loan or any subordinate lien on the Property; (c) companies that perform support

BAC MODIFICATION AGREEMENT – Single Family/DOJ with Forgiveness
(C3_3477 rev. 7/12) Bank of America, N.A.                                    (Page 3 of 10 pages)



C3_3477

services in conjunction with this Modification and (d) any HUD-certified housing counselor.

**BAC MODIFICATION AGREEMENT – Single Family/DOJ with Forgiveness**
**(C3_3477 rev. 7/12) Bank of America, N.A.**                    *(Page 3 of 10 pages)*



C3_3477

In Witness Whereof, the Lender and I have executed this Agreement.



_____          _____
Borrower  RUDY GUILLEN                    12.31.12
                                          Date


_____          _____
Borrower                                  Date


BAC MODIFICATION AGREEMENT – Single Family/DOJ with Forgiveness
(C3_3477 rev. 7/12) Bank of America, N.A.                    (Page 10 of 10 pages)

C3_3477

**DO NOT WRITE BELOW THIS LINE**

THIS SECTION IS FOR INTERNAL USE ONLY

**Bank of America, N.A.,**

By: Stewart Lender Services, Inc., its attorney in fact

By: _____     _____

                                                                        Date

_____, Stewart Lender Services, Inc.

**DO NOT WRITE BELOW THIS LINE**

-------------------------------------------------------------------------------------------------
THIS SECTION IS FOR INTERNAL USE ONLY

**Bank of America, N.A., for itself or as successor by merger to BAC Home Loans Servicing, LP**

By: Stewart Lender Services, Inc., its attorney in fact

By: _____          1/29/2013
      Michael Philippovic, A.V.P., Stewart Lender Services, Inc.          Date

# EXHIBIT A-5

| RLMS# | ACCTG | TRNTYP | TRNDTE | TRNDUE | BYDPMT | TRNAMT | TRNINT | ADNPMT | TRNPRN | TRNPBL | TRNINS | TRNESC | TRNEBL | TRNLTC | TRNLCB | TRPTPY | TRPPBL | LTCANP | INVBAL | INVANP | TRNESV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7600025808 | | 20 | 4/5/2007 | 5/1/2007 | 0 | 1269.52 | 1269.52 | 0 | | 164160 | | 0 | 164160 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 420 | 4/5/2007 | 5/1/2007 | 0 | 334.02 | 0 | 0 | | 164160 | | 334.02 | 0 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 490 | 4/5/2007 | 5/1/2007 | 0 | 1467.93 | 0 | 0 | | 164160 | | 1467.93 | 334.02 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 6/6/2007 | 6/1/2007 | 0 | 1898.63 | 1378.94 | 0 | 71.4 | 164160 | | 448.29 | 1801.95 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 7/13/2007 | 7/1/2007 | 0 | 1898.63 | 1378.34 | 0 | 72 | 164088.6 | | 448.29 | 2250.24 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 8/15/2007 | 8/1/2007 | 0 | 1898.63 | 1377.74 | 72.6 | 164016.6 | 5 | | 448.29 | 2698.53 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 9/19/2007 | 9/1/2007 | 0 | 1898.63 | 1377.13 | 73.21 | 163944 | | 448.29 | 3146.82 | 0 | | 0 | | -72.52 | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 10/16/2007 | 10/1/2007 | 0 | 1971.15 | 1376.51 | 73.83 | 163870.79 | | 448.29 | 3595.11 | 0 | -72.52 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 11/16/2007 | 11/1/2007 | 0 | 1898.63 | 1375.89 | 74.45 | 163796.96 | | 448.29 | 4043.4 | 0 | | 0 | | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 40 | 11/29/2007 | 10/1/2007 | 0 | -1898.63 | -1375.89 | -74.45 | 163722.51 | | -448.29 | 4491.69 | 0 | | 0 | | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 12/17/2007 | 11/1/2007 | 0 | 1898.63 | 1375.89 | 74.45 | 163796.96 | | 448.29 | 4043.4 | 0 | | 0 | | -72.52 | 0 | 0 | 0 | 0 |
| 7600025808 | | 20 | 12/17/2007 | 11/1/2007 | 0 | 72.52 | 0 | 0 | | 163722.51 | | 0 | 4491.69 | 0 | -72.52 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 1/11/2008 | 12/1/2007 | 0 | 2000 | 1375.27 | 75.07 | 163722.51 | | 448.29 | 4491.69 | 72.52 | 0 | | 28.85 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 594 | 1/14/2008 | 12/1/2007 | 0 | -1491.79 | 0 | 0 | | 163647.44 | | -1491.79 | 4939.98 | 0 | | 0 | | 28.85 | 0 | 0 | 0 |
| 7600025808 | | 599 | 1/18/2008 | 12/1/2007 | 0 | -1594.28 | 0 | 0 | | 163647.44 | | -1594.28 | 3448.19 | 0 | | 0 | | 28.85 | 0 | 0 | 0 |
| 7600025808 | | 590 | 1/22/2008 | 12/1/2007 | 0 | -854.35 | 0 | 0 | | 163647.44 | | -854.35 | 1853.91 | 0 | | 0 | | 28.85 | 0 | 0 | 0 |
| 7600025808 | | 520 | 3/4/2008 | 12/1/2007 | 0 | -1396 | 0 | 0 | | 163647.44 | | -1396 | 999.56 | 0 | | 0 | | 28.85 | 0 | 0 | 0 |
| 7600025808 | | 20 | 3/6/2008 | 12/1/2007 | 0 | 0 | 0 | 0 | | 163647.44 | | 28.85 | -396.44 | 0 | | 0 | | -28.85 | 28.85 | 0 | 0 |
| 7600025808 | | 10 | 3/6/2008 | 1/1/2008 | 0 | 1971.15 | 1374.64 | 0 | 75.7 | 163647.44 | | 448.29 | -367.59 | 72.52 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 3/21/2008 | 2/1/2008 | 0 | 1971.15 | 1374 | 0 | 76.34 | 163571.74 | | 448.29 | 80.7 | 72.52 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 4/4/2008 | 3/1/2008 | 0 | 2031.15 | 1373.36 | 0 | 76.98 | 163495.4 | | 448.29 | 528.99 | 72.52 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 20 | 4/28/2008 | 3/1/2008 | 0 | -30 | 0 | 0 | | 163418.42 | | 0 | 977.28 | 0 | | -30 | | 60 | 0 | 0 | 0 |
| 7600025808 | | 20 | 4/28/2008 | 3/1/2008 | 0 | -30 | 0 | 0 | | 163418.42 | | 0 | 977.28 | 0 | | -30 | | 30 | 0 | 0 | 0 |
| 7600025808 | | 10 | 5/19/2008 | 4/1/2008 | 0 | 1898.63 | 1372.71 | 0 | 77.63 | 163418.42 | | 448.29 | 977.28 | 0 | | 0 | | -72.52 | 0 | 0 | 0 |
| 7600025808 | | 20 | 5/19/2008 | 4/1/2008 | 0 | 101.37 | 0 | 0 | | 163340.79 | | 0 | 1425.57 | 0 | -72.52 | | 28.85 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 20 | 6/17/2008 | 4/1/2008 | 0 | 0 | 0 | 0 | | 163340.79 | | 28.85 | 1425.57 | 0 | | -28.85 | | 28.85 | 0 | 0 | 0 |
| 7600025808 | | 840 | 6/30/2008 | 3/1/2008 | 0 | -1450.34 | -1372.71 | 0 | -77.63 | 163340.79 | | 0 | 1454.42 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 810 | 6/30/2008 | 4/1/2008 | 0 | 1450.34 | 1372.71 | 0 | 77.63 | 163418.42 | | 0 | 1454.42 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 6/30/2008 | 5/1/2008 | 0 | 1898.63 | 1372.06 | 0 | 78.28 | 163340.79 | | 448.29 | 1454.42 | 0 | | 0 | | -72.52 | 0 | 0 | 0 |
| 7600025808 | | 10 | 6/30/2008 | 6/1/2008 | 0 | 1895.04 | 1371.41 | 0 | 78.93 | 163262.51 | | 444.7 | 1902.71 | 0 | -72.52 | | 0 | | -72.52 | 0 | 0 | 0 |
| 7600025808 | | 10 | 8/26/2008 | 7/1/2008 | 0 | 1895.04 | 1370.74 | 0 | 79.6 | 163183.58 | | 444.7 | 2347.41 | 0 | | 0 | | -72.52 | 0 | 0 | 0 |
| 7600025808 | | 20 | 7/29/2008 | 7/1/2008 | 0 | 145.04 | 0 | 0 | | 163103.98 | | 0 | 2792.11 | 0 | -217.56 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 8/26/2008 | 8/1/2008 | 0 | 2040.08 | 1370.07 | 0 | 80.27 | 163103.98 | | 444.7 | 2792.11 | 72.52 | -72.52 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 9/9/2008 | 9/1/2008 | 0 | 1895.04 | 1369.4 | 0 | 80.94 | 163023.71 | | 444.7 | 3236.81 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 10/16/2008 | 10/1/2008 | 0 | 1895.04 | 1368.72 | 0 | 81.62 | 162942.77 | | 444.7 | 3681.51 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 11/14/2008 | 11/1/2008 | 0 | 1895.04 | 1368.03 | 0 | 82.31 | 162861.15 | | 444.7 | 4126.21 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 12/16/2008 | 12/1/2008 | 0 | 1895.04 | 1367.34 | 0 | 83 | 162778.84 | | 444.7 | 4570.91 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 594 | 12/17/2008 | 12/1/2008 | 0 | -2508.99 | 0 | 0 | | 162695.84 | | -2508.99 | 5015.61 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 590 | 12/19/2008 | 12/1/2008 | 0 | -1231.26 | 0 | 0 | | 162695.84 | 0 | -1231.26 | 2506.62 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 599 | 12/31/2008 | 12/1/2008 | 0 | -2310.91 | 0 | 0 | | 162695.84 | | -2310.91 | 1275.36 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 1/16/2009 | 1/1/2009 | 0 | 1895.04 | 1366.65 | 0 | 83.69 | 162695.84 | | 444.7 | -1035.55 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 2/13/2009 | 2/1/2009 | 0 | 1895.04 | 1365.94 | 0 | 84.4 | 162612.15 | | 444.7 | -590.85 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 520 | 3/4/2009 | 2/1/2009 | 0 | -1646 | 0 | 0 | | 162527.75 | | -1646 | -146.15 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 3/16/2009 | 3/1/2009 | 0 | 2289.57 | 1365.23 | 0 | 85.11 | 162527.75 | | 839.23 | -1792.15 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 4/1/2009 | 4/1/2009 | 0 | 2289.57 | 1364.52 | 0 | 85.82 | 162442.64 | | 839.23 | -952.92 | 0 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 6/26/2009 | 5/1/2009 | 0 | 2289.57 | 1363.8 | 0 | 86.54 | 162356.82 | | 839.23 | -113.69 | 0 | | 0 | | -72.52 | 0 | 0 | 0 |
| 7600025808 | | 594 | 12/16/2009 | 5/1/2009 | 0 | -2468.18 | 0 | 0 | | 162270.28 | | -2468.18 | 725.54 | 0 | -72.52 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 590 | 12/24/2009 | 5/1/2009 | 0 | -1211.57 | 0 | 0 | | 162270.28 | | -1211.57 | -1742.64 | 0 | -72.52 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 599 | 12/24/2009 | 5/1/2009 | 0 | -2273.32 | 0 | 0 | | 162270.28 | | -2273.32 | -2954.21 | 0 | -72.52 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 520 | 3/4/2010 | 5/1/2009 | 0 | -1571 | 0 | 0 | | 162270.28 | | -1571 | -5227.53 | 0 | -72.52 | | 0 | | 0 | 0 | 0 | 0 |
| 7600025808 | | 590 | 12/15/2010 | 5/1/2009 | 0 | -1213.35 | 0 | 0 | | 162270.28 | | -1213.35 | -6798.53 | 0 | -72.52 | | 0 | | 0 | 0 | 0 | 0 |

| RLMS# | ACCT | TRNTYP | TRNDTE | TRNDUE | BYDPMT | TRNAMT | TRNINT | ADNPMT | TRNPRN | TRNPBL | TRNINS | TRNESC | TRNEBL | TRNLTC | TRNLCB | TRPTPY | TRPPBL | LTCANP | INVBAL | INVANP | TRNESV |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7600025808 | | 594 | 12/15/2010 | 5/1/2009 | 0 | -2445.47 | 0 | 0 | | 162270.28 | 0 | -2445.47 | -8011.88 | 0 | -72.52 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 599 | 12/20/2010 | 5/1/2009 | 0 | -2252.4 | 0 | 0 | | 162270.28 | 0 | -2252.4 | -10457.35 | 0 | -72.52 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 520 | 3/4/2011 | 5/1/2009 | 0 | -2827 | 0 | 0 | | 162270.28 | 0 | -2827 | -12709.75 | 0 | -72.52 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 594 | 12/6/2011 | 5/1/2009 | 0 | -2445.47 | 0 | 0 | | 162270.28 | 0 | -2445.47 | -15536.75 | 0 | -72.52 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 590 | 12/9/2011 | 5/1/2009 | 0 | -1218.81 | 0 | 0 | | 162270.28 | 0 | -1218.81 | -17982.22 | 0 | -72.52 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 599 | 12/12/2011 | 5/1/2009 | 0 | -2236.32 | 0 | 0 | | 162270.28 | 0 | -2236.32 | -19201.03 | 0 | -72.52 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 520 | 2/28/2012 | 5/1/2009 | 0 | -3643 | 0 | 0 | | 162270.28 | 0 | -3643 | -21437.35 | 0 | -72.52 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 20 | 9/4/2012 | 5/1/2009 | 0 | 2254.24 | 0 | 0 | | 162270.28 | 0 | 0 | -25080.35 | 0 | -72.52 | 2254.24 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 20 | 10/5/2012 | 5/1/2009 | 0 | 2254.24 | 0 | 0 | | 162270.28 | 0 | 0 | -25080.35 | 0 | -72.52 | 2254.24 | 2254.24 | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 10/9/2012 | 6/1/2009 | 0 | 2289.57 | 1363.07 | 0 | 87.27 | 162270.28 | 0 | 839.23 | -25080.35 | 0 | -72.52 | 0 | 4508.48 | 0 | 0 | 0 | 0 |
| 7600025808 | | 20 | 10/9/2012 | 6/1/2009 | 0 | -2289.57 | 0 | 0 | | 162183.01 | 0 | 0 | -24241.12 | 0 | -72.52 | -2289.57 | 4508.48 | 0 | 0 | 0 | 0 |
| 7600025808 | | 20 | 11/6/2012 | 6/1/2009 | 0 | 2254.24 | 0 | 0 | | 162183.01 | 0 | 0 | -24241.12 | 0 | -72.52 | 2254.24 | 2218.91 | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 11/7/2012 | 7/1/2009 | 0 | 2289.57 | 1362.34 | 0 | 88 | 162183.01 | 0 | 839.23 | -24241.12 | 0 | -72.52 | 0 | 4473.15 | 0 | 0 | 0 | 0 |
| 7600025808 | | 20 | 11/7/2012 | 7/1/2009 | 0 | -2289.57 | 0 | 0 | | 162095.01 | 0 | 0 | -23401.89 | 0 | -72.52 | -2289.57 | 4473.15 | 0 | 0 | 0 | 0 |
| 7600025808 | | 594 | 12/7/2012 | 7/1/2009 | 0 | -2112.6 | 0 | 0 | | 162095.01 | 0 | -2112.6 | -23401.89 | 0 | -72.52 | 0 | 2183.58 | 0 | 0 | 0 | 0 |
| 7600025808 | | 590 | 12/14/2012 | 7/1/2009 | 0 | -1051.3 | 0 | 0 | | 162095.01 | 0 | -1051.3 | -25514.49 | 0 | -72.52 | 0 | 2183.58 | 0 | 0 | 0 | 0 |
| 7600025808 | | 599 | 12/19/2012 | 7/1/2009 | 0 | -1862.43 | 0 | 0 | | 162095.01 | 0 | -1862.43 | -26565.79 | 0 | -72.52 | 0 | 2183.58 | 0 | 0 | 0 | 0 |
| 7600025808 | | 20 | 1/23/2013 | 7/1/2009 | 0 | -2183.58 | 0 | 0 | -27830.45 | 162095.01 | 0 | 0 | -28428.22 | 0 | -72.52 | -2183.58 | 2183.58 | 0 | 0 | 0 | 0 |
| 7600025808 | | 20 | 1/25/2013 | 7/1/2009 | 0 | 0 | 0 | 0 | | 162095.01 | 0 | 22694.45 | -28428.22 | 0 | -72.52 | 5136 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 940 | 1/25/2013 | 12/1/2012 | 0 | -55141.88 | 0 | 0 | -55141.88 | 189925.46 | 0 | 0 | -5733.77 | 0 | -72.52 | 0 | 5136 | 0 | 0 | 0 | 0 |
| 7600025808 | | 944 | 1/25/2013 | 12/1/2012 | 0 | 0 | 0 | 0 | | 245067.34 | 0 | 0 | -5733.77 | 0 | -72.52 | 0 | 5136 | 0 | 0 | 0 | 0 |
| 7600025808 | | 940 | 1/25/2013 | 12/1/2012 | 0 | 85267.34 | 0 | 0 | 85267.34 | 245067.34 | 0 | 0 | -5733.77 | 0 | -72.52 | 0 | 5136 | 0 | 0 | 0 | 0 |
| 7600025808 | | 20 | 1/28/2013 | 12/1/2012 | 0 | -5136 | 0 | 0 | | 159800 | 0 | 0 | -5733.77 | 0 | -72.52 | -5136 | 5136 | 0 | 0 | 0 | 0 |
| 7600025808 | | 10 | 1/28/2013 | 1/1/2013 | 0 | 2318.23 | 1175.86 | 0 | 155.36 | 159800 | 0 | 914.49 | -5733.77 | 0 | -72.52 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 40 | 2/7/2013 | 12/1/2012 | 0 | -2318.23 | -1175.86 | 0 | -155.36 | 159644.64 | 0 | -914.49 | -4819.28 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 947 | 2/7/2013 | 12/1/2012 | 0 | 66.56 | 0 | 0 | | 159800 | 0 | 0 | -5733.77 | 66.56 | -5.96 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 947 | 2/7/2013 | 12/1/2012 | 0 | 5.96 | 0 | 0 | | 159800 | 0 | 0 | -5733.77 | 5.96 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 946 | 2/8/2013 | 1/1/2013 | 0 | 66.56 | 0 | 0 | | 159800 | 0 | 0 | -5733.77 | 0 | 0 | 0 | 0 | 0 | -66.56 | 0 | 0 |
| 7600025808 | | 520 | 2/27/2013 | 12/1/2012 | 0 | -4798 | 0 | 0 | | 159800 | 0 | -4798 | -5733.77 | 0 | -66.56 | 0 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 946 | 3/18/2013 | 3/1/2013 | 0 | 66.56 | 0 | 0 | | 159800 | 0 | 0 | -10531.77 | 0 | -66.56 | 0 | 0 | 0 | -66.56 | 0 | 0 |
| 7600025808 | | 946 | 4/16/2013 | 4/1/2013 | 0 | 66.56 | 0 | 0 | | 159800 | 0 | 0 | -10531.77 | 0 | -133.12 | 0 | 0 | 0 | -66.56 | 0 | 0 |
| 7600025808 | | 20 | 7/3/2013 | 12/1/2012 | 0 | 32 | 0 | 0 | | 159800 | 0 | 0 | -10531.77 | 0 | -199.68 | 32 | 0 | 0 | 0 | 0 | 0 |
| 7600025808 | | 594 | 11/5/2013 | 12/1/2012 | 0 | -2399.5 | 0 | 0 | | 159800 | 0 | -2399.5 | -10531.77 | 0 | -199.68 | 0 | 32 | 0 | 0 | 0 | 0 |
| 7600025808 | | 590 | 12/11/2013 | 12/1/2012 | 0 | -1187.67 | 0 | 0 | | 159800 | 0 | -1187.67 | -12931.27 | 0 | -199.68 | 0 | 32 | 0 | 0 | 0 | 0 |
| 7600025808 | | 599 | 12/12/2013 | 12/1/2012 | 0 | -1878.56 | 0 | 0 | | 159800 | 0 | -1878.56 | -14118.94 | 0 | -199.68 | 0 | 32 | 0 | 0 | 0 | 0 |

# EXHIBIT A-6

## All Transactions as of 5/18/2015

| Loan Number | Transaction Table | Transaction Group | Transaction Type | Transaction Date | Period | Tx. Code | Description | Sequence Number | Batch Number | Processor ID | Payment Due Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | NC | Boarding | Boarding | 01/30/2014 | 201401 | 142 | Loan Setup | 1 | [1] | | |
| | NC | Payment | Adjustment | 01/30/2014 | 201401 | 132 | Late Charge Adjustment | 2 | [1] | | |
| | NC | Payment | Adjustment | 01/30/2014 | 201401 | 145 | Adjustment | 3 | [1] | | |
| | CA | Corporate Advance | Adjustment | 01/31/2014 | 201401 | 745 | Corporate Advance Adjustment | 9999 | | ELI | |
| | PMT | Payment | Payment | 01/31/2014 | 201401 | 170 | Payment | 1 | 9EL | | 01/01/2013 |
| | CA | Corporate Advance | Advance | 02/14/2014 | 201402 | 631 | Property Preservation Disbursement | 9999 | | NIV | |
| | CA | Corporate Advance | Advance | 03/07/2014 | 201403 | 631 | Property Preservation Disbursement | 9999 | | NIV | |
| | ESC | Escrow | Advance | 03/10/2014 | 201403 | 161 | Escrow Advance | 2 | | | |
| | ESC | Escrow | Disbursement | 03/10/2014 | 201403 | 351 | Hazard Insurance Disbursement (Primary Policy) | 1 | HAZ | | |
| | CA | Corporate Advance | Advance | 03/28/2014 | 201403 | 631 | Property Preservation Disbursement | 9999 | | NIV | |
| | CA | Corporate Advance | Advance | 05/02/2014 | 201405 | 631 | Property Preservation Disbursement | 9999 | | NIV | |
| | CA | Corporate Advance | Advance | 05/16/2014 | 201405 | 631 | Property Preservation Disbursement | 9999 | | NIV | |
| | CA | Corporate Advance | Advance | 06/06/2014 | 201406 | 631 | Property Preservation Disbursement | 9999 | | NIV | |
| | CA | Corporate Advance | Advance | 07/11/2014 | 201407 | 631 | Property Preservation Disbursement | 9999 | | NIV | |
| | CA | Corporate Advance | Advance | 08/08/2014 | 201408 | 631 | Property Preservation Disbursement | 9999 | | NIV | |
| | CA | Corporate Advance | Advance | 09/12/2014 | 201409 | 631 | Property Preservation Disbursement | 9999 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 630 | Attorney Advance Disbursement | 9997 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 630 | Attorney Advance Disbursement | 9996 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 630 | Attorney Advance Disbursement | 9999 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 630 | Attorney Advance Disbursement | 9998 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 633 | Miscellaneous F/C and B/R Expense Disbursement | 9995 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 633 | Miscellaneous F/C and B/R Expense Disbursement | 9989 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 633 | Miscellaneous F/C and B/R Expense Disbursement | 9992 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 633 | Miscellaneous F/C and B/R Expense Disbursement | 9991 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 633 | Miscellaneous F/C and B/R Expense Disbursement | 9994 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 633 | Miscellaneous F/C and B/R Expense Disbursement | 9988 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 633 | Miscellaneous F/C and B/R Expense Disbursement | 9985 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 633 | Miscellaneous F/C and B/R Expense Disbursement | 9986 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 633 | Miscellaneous F/C and B/R Expense Disbursement | 9987 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 633 | Miscellaneous F/C and B/R Expense Disbursement | 9984 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 633 | Miscellaneous F/C and B/R Expense Disbursement | 9993 | | NIV | |
| | CA | Corporate Advance | Advance | 09/19/2014 | 201409 | 633 | Miscellaneous F/C and B/R Expense Disbursement | 9990 | | NIV | |
| | CA | Corporate Advance | Adjustment | 12/29/2014 | 201412 | 745 | Corporate Advance Adjustment | 9998 | | HE1 | |
| | CA | Corporate Advance | Adjustment | 12/29/2014 | 201412 | 745 | Corporate Advance Adjustment | 9999 | | HE1 | |
| | NC | Payment | Adjustment | 12/29/2014 | 201412 | 143 | Adjustment | 1 | HE1 | | |
| | NC | Payment | Adjustment | 12/29/2014 | 201412 | 145 | Adjustment | 2 | HE1 | | |
| | CA | Corporate Advance | Adjustment | 12/30/2014 | 201412 | 745 | Corporate Advance Adjustment | 9999 | | HE1 | |
| | CA | Corporate Advance | Adjustment | 12/30/2014 | 201412 | 745 | Corporate Advance Adjustment | 9998 | | HE1 | |
| | CA | Corporate Advance | Adjustment | 12/30/2014 | 201412 | 745 | Corporate Advance Adjustment | 9996 | | HE1 | |
| | CA | Corporate Advance | Adjustment | 12/30/2014 | 201412 | 745 | Corporate Advance Adjustment | 9997 | | HE1 | |
| | ESC | Escrow | Disbursement | 12/30/2014 | 201412 | 305 | Escrow Disbursement to Servicer | 1 | 4Q5 | | |
| | PMT | Payment | Payment | 12/30/2014 | 201412 | 170 | Payment | 1 | 4Q5 | | 01/01/2013 |

| Transaction Amount | Principal Payment | Interest Payment | Escrow Payment | Restricted Escrow | Fees Collected | Servicing Fees | Service Charge | HUD | Life Insurance | Accidental Health | Replacement Reserve | Miscellaneous | Suspense Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| -159,800.00 | -159,800.00 | 0.00 | | | | | | | | | | | |
| -199.68 | 0.00 | 0.00 | | | | | | | | | | | |
| 15,997.50 | 0.00 | 0.00 | | | | | | | | | | | |
| 375.00 | | | | | | | | | | | | | |
| 32.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 32.00 |
| 11.50 | | | | | | | | | | | | | |
| 11.50 | | | | | | | | | | | | | |
| 6,353.00 | | | | | | | | | | | | | |
| -6,353.00 | | | | | | | | | | | | | |
| 11.50 | | | | | | | | | | | | | |
| 11.50 | | | | | | | | | | | | | |
| 100.00 | | | | | | | | | | | | | |
| 11.50 | | | | | | | | | | | | | |
| 11.50 | | | | | | | | | | | | | |
| 11.50 | | | | | | | | | | | | | |
| 11.50 | | | | | | | | | | | | | |
| 300.00 | | | | | | | | | | | | | |
| 300.00 | | | | | | | | | | | | | |
| 100.00 | | | | | | | | | | | | | |
| 200.00 | | | | | | | | | | | | | |
| 4.00 | | | | | | | | | | | | | |
| 25.00 | | | | | | | | | | | | | |
| 20.00 | | | | | | | | | | | | | |
| 4.00 | | | | | | | | | | | | | |
| 100.00 | | | | | | | | | | | | | |
| 24.00 | | | | | | | | | | | | | |
| 94.72 | | | | | | | | | | | | | |
| 24.00 | | | | | | | | | | | | | |
| 7.56 | | | | | | | | | | | | | |
| 189.44 | | | | | | | | | | | | | |
| 4.27 | | | | | | | | | | | | | |
| 4.00 | | | | | | | | | | | | | |
| -475.00 | | | | | | | | | | | | | |
| -8,478.13 | | | | | | | | | | | | | |
| 159,800.00 | 159,800.00 | 0.00 | | | | | | | | | | | |
| -22,350.50 | 0.00 | 0.00 | | | | | | | | | | | |
| 8,478.13 | | | | | | | | | | | | | |
| -1,943.99 | | | | | | | | | | | | | |
| -24.00 | | | | | | | | | | | | | |
| 475.00 | | | | | | | | | | | | | |
| -32.00 | | | | | | | | | | | | | |
| 0.00 | 0.00 | 0.00 | 32.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -32.00 |

| Payee ID | Corporate Payee ID | Check Number | Disbursement Date | Recoverable Code | Recoverable Code Description | Reason Code | Reason Code Description |
|---|---|---|---|---|---|---|---|
| | 20R01 | | | R | Recoverable | | ACQC |
| PPFIELDASS | 20R01 | 071108 | | R | Recoverable | FPIR | FC PROP INSPEC |
| PPFIELDASS | 20R01 | 073711 | | R | Recoverable | FPIR | FC PROP INSPEC |
| 70079 | | PEND.. | 01/01/2013 04/01/2014 | | | | |
| PPFIELDASS | 20R01 | 076792 | | R | Recoverable | FPIR | FC PROP INSPEC |
| PPFIELDASS | 20R01 | 082741 | | R | Recoverable | FPIR | FC PROP INSPEC |
| APAVALMARK | 20R01 | | | R | Recoverable | FBPO | FORECLOSURE BPO |
| PPFIELDASS | 20R01 | | | R | Recoverable | FPIR | FC PROP INSPEC |
| PPFIELDASS | 20R01 | | | R | Recoverable | FPIR | FC PROP INSPEC |
| PPFIELDASS | 20R01 | | | R | Recoverable | FPIR | FC PROP INSPEC |
| PPFIELDASS | 20R01 | | | R | Recoverable | FPIR | FC PROP INSPEC |
| ATMACKIE | 20R01 | 102814 | | R | Recoverable | FFEE | FORECLOSURE FEES |
| ATMACKIE | 20R01 | 102814 | | R | Recoverable | FFEE | FORECLOSURE FEES |
| ATMACKIE | 20R01 | 102814 | | R | Recoverable | FFEE | FORECLOSURE FEES |
| ATMACKIE | 20R01 | 102814 | | R | Recoverable | FFEE | FORECLOSURE FEES |
| ATMACKIE | 20R01 | 102915 | | R | Recoverable | FCST | FORECLOSURE COST |
| ATMACKIE | 20R01 | 102915 | | R | Recoverable | FCST | FORECLOSURE COST |
| ATMACKIE | 20R01 | 102915 | | R | Recoverable | FCST | FORECLOSURE COST |
| ATMACKIE | 20R01 | 102915 | | R | Recoverable | FCST | FORECLOSURE COST |
| ATMACKIE | 20R01 | 102915 | | R | Recoverable | FCST | FORECLOSURE COST |
| ATMACKIE | 20T01 | 102915 | | T | Third Party Recoverable | FCNR | FC COST NON REC |
| ATMACKIE | 20R01 | 102915 | | R | Recoverable | FCST | FORECLOSURE COST |
| ATMACKIE | 20R01 | 102915 | | R | Recoverable | FCST | FORECLOSURE COST |
| ATMACKIE | 20R01 | 102915 | | R | Recoverable | FCST | FORECLOSURE COST |
| ATMACKIE | 20R01 | 102915 | | R | Recoverable | FCST | FORECLOSURE COST |
| ATMACKIE | 20R01 | 102915 | | R | Recoverable | FCST | FORECLOSURE COST |
| | 20T01 | | | T | Third Party Recoverable | 0UPB | REMOVAL 0UPB |
| | 20R01 | | | R | Recoverable | 0UPB | REMOVAL 0UPB |
| | 20R01 | | | R | Recoverable | 0UPB | REMOVAL 0UPB |
| | 20R01 | | | R | Recoverable | 0UPB | 0UPB REMOVAL |
| | 20T01 | | | T | Third Party Recoverable | 0UPB | 0UPB REMOVAL |
| | 20T01 | | | T | Third Party Recoverable | 0UPB | REMOVAL 0UPB |
| | | PEND.. | | | | | |