## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| RUDY GUILLEN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-15-849 |
| | § | |
| COUNTRYWIDE HOME LOANS, INC., | § | |
| N/K/A BANK OF AMERICA, N.A., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

### MEMORANDUM OPINION & ORDER

Pending before the court is the Fifth Circuit's order of limited remand for the purpose of assessing subject matter jurisdiction in light of the Supreme Court decision in *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012 (2016). Dkt. 39. Having considered the record, briefings, and applicable law, the court is of the opinion that this court DOES NOT have jurisdiction to hear this case based on diversity jurisdiction. The case should be RETURNED to the Fifth Circuit for appropriate action.

### I. BACKGROUND

On March 12, 2015, Guillen filed his original petition in the 295th District Court of Harris County, Texas, contesting a foreclosure on his property against four parties: Countrywide Home Loans, Inc. n/k/a Bank of America, National Association ("Bank of America"), U.S. Bank, National Association as Legal Title Trustee for the Truman 2013 SC3 Title Trust ("U.S. Bank"), Rushmore Loan Management Services, LLC ("Rushmore"), and Mortgage Electronic Registration Systems, Inc. ("MERS") (collectively "Defendants"). Dkt. 1 at 7. On April 2, 2015, Defendants timely removed the case on the grounds of diversity jurisdiction. Dkts. 1, 13. On July 15, 2015, this court

issued an order granting summary judgment in favor of the Defendants (Dkt. 27), and on October 15, 2015, the court denied Guillen's motion for a new trial (Dkt. 35).  On November 19, 2015, Guillen appealed (Dkt. 37) and on September 9, 2016, the Fifth Circuit ordered limited remand for the purpose of assessing jurisdiction in light of *Americold,* making any factual findings, considering different approaches taken by courts in the Fifth Circuit, and issuing a ruling.  Dkt. 39.  On September 21, 2016, the court ordered defendants Bank of America and U.S. Bank to present evidence of their principal places of business and main offices as designated in their articles of association.  Dkt. 41.  On October 20, 2016, the court ordered the parties to file any supplemental briefing on the question of jurisdiction.  Dkt. 44.  The parties have now fully briefed the court.  Dkts. 51–56.  The court will first assess the post-*Americold* cases in the Fifth Circuit to determine the prevailing legal standard on whether to consider the citizenship of a trustee or of the trust's members to determine jurisdiction, and it will then rule on jurisdiction in the instant case.

## II. LAW AND ANALYSIS

The Fifth Circuit granted limited remand to determine whether this court has subject matter jurisdiction. Both parties agree that the amount in controversy exceeds $75,000, leaving the court to consider only whether the parties are completely diverse. At issue is whether to consider the citizenship of the trustee or of the trust's members when determining diversity of citizenship for subject matter jurisdiction.  Pursuant to the court's September 21, 2016 order requesting that each bank present evidence of their principal places of business and articles of association (Dkt. 41), Bank of America presented its articles of association and asserts that its principal place of business and main office are in Charlotte, North Carolina (Dkt. 42).  U.S. Bank  presented the articles of

2

association for its predecessor bank[1] and asserts its principal place of business and main office are both in Ohio.  Dkt. 43.  For purposes of diversity, the other Defendants' citizenship include that of Rushmore, a limited liability corporation whose sole member is a Delaware limited liability company, and MERS, a corporation with its principal place of business in Virginia and state of incorporation in Delaware.  Dkt. 13.

**A**. ***Navarro*** **and** ***Americold*** **co-exist to determine a trustee's and trust's citizenship for purposes of diversity jurisdiction**

The question on remand is how the Supreme Court's decisions in *Navarro Savings Association v. Lee* and *Americold Realty Trust v. Conagra Foods, Inc.* guide this court's analysis on diversity jurisdiction. 446 U.S. 458, 100 S. Ct. 1779 (1980); 136 S. Ct. 1012 (2016).  As a threshold question, courts must inquire who is a real party to the controversy.  In *Navarro*, the Court set a standard for when a trustee's citizenship alone is considered for purposes of diversity jurisdiction.  446 U.S. at 459–60.  Eight trustees of a business trust sued in their own names for a breach of contract.  *Id.*  Only when a trustee "possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others" is he or she a real party to the controversy.  *Id.* at 464. The Court held that when trustees have exclusive authority over the property and the declaration of the trust "authorizes the trustees to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees," then "trustees who meet this standard [may] sue in their own right, without regard to the citizenship of the trust beneficiaries." *Id.* at 464–66.

---

[1] U.S. Bank provided the articles of association for "U.S. Bank f/k/a Star Bank, National Association, executed on or about October 28, 1991."  Dkt. 43 at 1, Ex. A.

In March 2016, the Supreme Court decided *Americold Realty Trust v. Conagra Foods, Inc.*, and clarified that the rule set out in *Navarro* only applies when a trustee files a lawsuit in his or her name or is being sued in his or her name.

> *Navarro* had nothing to do with the citizenship of [a] "trust." Rather, *Navarro* reaffirmed a separate rule that when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs—as is true of any natural person. This rule coexists with [the rule] that when an artificial entity is sued in *its* name, it takes the citizenship of each of its members.

*Americold*, 136 S. Ct. at 1016 (2016) (internal citations omitted).

In *Americold,* the Court held that a real estate investment trust organized under Maryland law was not incorporated, and thus the citizenship of the trust's members is used to determine complete diversity. *Id.* at 1015. Under Maryland law, a real estate investment trust is an unincorporated business trust or association and the trust property benefits any person who may become a shareholder. *Id.* at 1016 (internal citations removed). Therefore, for purposes of diversity jurisdiction, the real estate investment trust's members were its shareholders. *Id.* "So long as such an entity is unincorporated, we apply our 'oft-repeated rule' that it possesses the citizenship of all its members. But neither this rule nor *Navarro* limits an entity's membership to its trustees just because the entity happens to call itself a trust." *Id.* (internal citations omitted). "While humans and corporations can assert their own citizenship, other entities take the citizenship of their members." *Id.* at 1014.

### B. The citizenship of a national bank

For purposes of diversity jurisdiction, "[a]ll national banking associations shall, for the purposes of all [] actions by or against them, be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. In *Wachovia Bank, N.A. v. Schmidt*, the Supreme Court interpreted the word "located" as the state in which the bank's "main office" is located, as designated

in its organization certificate and articles of association.  546 U.S. 303, 306–07, 126 S. Ct. 941, 945 (2006) (holding a national bank is not a citizen of every state in which it has a branch office).  Upon formation, a national bank must designate in its organization certificate and articles of association the "place where its operations of discount and deposit are to be carried on" and any changes in that location are made by amendment to the bank's articles of association.  12 U.S.C. §§ 21a, 22, 30(b); 12 CFR § 5.40(d)(2)(ii) (2005).

Prior to the *Wachovia* decision, the Fifth Circuit interpreted the word "located" in § 1348 to include both a bank's principal place of business and state designated in its articles of association. *Horton v. Bank One, N.A.*, 387 F.3d 426, 431 (5th Cir. 2004); *see also Firstar Bank, N.A. v. Faul*, 253 F.3d 982, 985 (7th Cir. 2001).  Under 28 U.S.C. § 1332(c)(1), state banks are citizens of the state where their principal place of business is located and of their state of incorporation.  In *Horton,* the Fifth Circuit attempted to achieve jurisdictional parity between national banks and state banks and held that in addition to its main office, a national banking association also had citizenship in the state of its principal place of business.  387 F.3d at 431.  "[A] national bank is a citizen of the state in which its principal place of business is located and of the state that was originally designated in its organization certificate and articles of association or . . . the state to which that designation has been changed under other authority."  *Id.* at 431 n.26 (citing OCC Interpretive Letter No. 952, 2002 WL 32072482, at *4 (Oct. 23, 2002)).

While the *Wachovia* Court did not explicitly overturn the *Horton* and *Firstar* propositions, it did reason that though § 1332(c)(1) provides that an incorporated state bank may be a citizen of both its principal place of business and its main office, in the case of a national bank, those two locations are usually one and the same.

5

> To achieve complete parity with state banks and other state-incorporated entities, a national banking association would have to be deemed a citizen of both the State of its main office and the State of its principal place of business. *See Horton*, 387 F.3d at 431, and n.26; *Firstar Bank, N. A.*, 253 F.3d at 993–94. Congress has prescribed that a corporation "shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1) (emphasis added). The counterpart provision for national banking associations, § 1348, however, does not refer to "principal place of business"; it simply deems such associations "citizens of the States in which they are respectively located." The absence of a "principal place of business" reference in § 1348 may be of scant practical significance for, in almost every case, as in this one, the location of a national bank's main office and of its principal place of business coincide.

*Wachovia*, 546 U.S. at 317 n.9.

In the wake of the *Wachovia* decision, several federal courts of appeals held that a national bank is only a citizen of the state of its main office as designated in its articles of association. *See, e.g.*, *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 219 (2d Cir. 2016) ("We agree with our sister circuits that a national bank is a citizen only of the state listed in its articles of association as its main office."); *Rouse v. Wachovia Mortg., FSB*, 747 F.3d 707, 708 (9th Cir. 2014) ("Looking to the Supreme Court's treatment of the issue and to the history and sequence of the enactment and amendment of the statute, we conclude that, under § 1348, a national bank is 'located' only in the state designated as its main office."); *Wells Fargo Bank, N.A. v. WMR e–PIN, LLC*, 653 F.3d 702, 706–10 (8th Cir. 2011) (analyzing *Wachovia* and § 1348's statutory history to "reject [the] claim that Wells Fargo is a citizen of both South Dakota and California").

Post-*Wachovia*, most district courts in the Fifth Circuit have also pivoted away from the *Horton* decision, deeming a national banking association is "located" in the state where its main office is located. *HSBC Bank USA v. Johnson*, No. CV H-15-0277, 2016 WL 1626219, at *1 (S.D. Tex. Apr. 25, 2016) (Atlas, J.) ("HSBC has its main office in Virginia and, therefore, is a citizen of

6

that state."); *PNC Bank, N.A. v. Sylvia Ruiz & Mark Richard Rude*, No. 1-15-CV-770 RP, 2016 WL

5947386, at *2 (W.D. Tex. Apr. 8, 2016) (Pitman, J.) (citing *Wachovia* and noting that plaintiff bank

attached its articles of association as an exhibit to its complaint); *Betts v. Wells Fargo Home Mortg.*,

No. 3:15-CV-2016-G, 2016 WL 3675589, at *3 (N.D. Tex. June 13, 2016), *report and*

*recommendation adopted*, No. 3:15-CV-2016-G (BH), 2016 WL 3612783 (N.D. Tex. July 6, 2016)

("Because Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A., and Wells Fargo

Bank, N.A.'s main office is located in South Dakota, Defendants have shown that Wells Fargo is a

citizen of South Dakota.").   One district court provided a bifurcated rule to determine the citizenship

of a state or federal bank:

> If First National Bank of Edinburg is a <u>national bank</u>, its citizenship is determined
> by the location of its main office, as set forth in its articles of association. *See* 28
> U.S.C. § 1348; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307, 126 S.Ct. 941, 163
> L.Ed.2d 797 (2006).  If First National Bank of Edinburg is chartered as a corporate
> body of a particular <u>state</u>, it is deemed a citizen of the state of incorporation and of
> the state where it has its principal place of business. See 28 U.S.C. § 1332(c)(1);
> *Wachovia*, 546 U.S. at 307.

*Padilla v. First Nat'l Bank of Edinburg*, No. SA-13-CV-1153-XR, 2014 WL 2781340, at *1 (W.D.
Tex. June 19, 2014) (Rodriguez, J.) (unreported) (emphasis added).

The court agrees that a national bank's citizenship is determined by the location of its main

office as designated in its articles of association.  U.S. Bank designated Ohio as its main office and

Bank of America designated North Carolina as its main office in their respective pleadings, and thus

are considered citizens of those states.[2]  Dkts. 1, 42, 43.

---

[2] At the threshold, U.S. Bank argues that jurisdiction is already assumed because it filed a
"short and plain statement of the grounds for removal" and Guillen did not contest jurisdiction until
proceedings in the Fifth Circuit.  Dkt. 51 (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*,
135 S. Ct. 547, 553–54 (2014)).  The court finds that a short statement in its notice of removal would
suffice only if the premise that U.S. Bank is the real party to the controversy were true.  Further,
Guillen has contested jurisdiction: U.S. Bank need look no further than the Fifth Circuit's order of
remand to assess jurisdiction post-*Americold* (Dkt. 39) and 28 U.S.C. § 1332, which requires subject

### C. Determining citizenship of a trust

After *Americold* was decided, some courts have taken a two-step approach to determining the citizenship of a trust for purposes of diversity: (1) identify whether the trust or the trustee is the real and substantial party to the controversy, and (2) if the trust is the real party, then determine whether it is a "traditional trust" where a court looks to the citizenship of the trustee, or whether it is a "business trust" (unincorporated association) where a court looks to the citizenship of the trust's members to determine jurisdiction. *Americold*, 136 S. Ct. at 1016.

### 1. Real and substantial party to the controversy

#### (a) Legal Standard

At the outset, the court must determine who is the real and substantial party to the controversy that is being haled to court—the trust or the trustee. "[N]either [*Americold*] nor *Navarro* limits an entity's membership to its trustees just because the entity happens to call itself a trust." *Id.*; *see Wells Fargo Bank, N.A. v. Transcon. Realty Investors, Inc.*, No. 3:14-CV-3565-BN, 2016 WL 3570648, at *2 (N.D. Tex. July 1, 2016) ("The 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy. Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.") (quoting *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853 (5th Cir. 2003)); *Juarez v. DHI  Mortg., Ltd.*, No. CV H-15-3534, 2016 WL 3906296, at *2 (S.D. Tex. July 19, 2016) (Miller, J.).

If the trustee is suing or is being sued in his or her own name, then the *Navarro* rule applies. Trustees that have exclusive authority over the property (the declaration of the trust "authorizes  the

matter jurisdiction at all stages of litigation.

trustees to take legal title to trust assets, to invest those assets for the benefit of the shareholders, and to sue and be sued in their capacity as trustees,")  may "sue in their own right, without regard to the citizenship of the trust beneficiaries." *Navarro*, 446 U.S. at 464–66.  In these instances, the court will look to the trustee alone to determine jurisdiction.

Under Texas law, however, naming a trustee of a trust in a pleading brings the trust into the suit. *In re Ashton*, 266 S.W.3d 602, 604 (Tex. App.—Dallas 2008, pet. granted). "[F]or relief to be granted against a trust, the trust—through its trustee—must be made a party to the action." *Id.* "While in some jurisdictions trusts have a separate legal existence, Texas is not one of those . . . The term 'trust' refers not to a separate legal entity but rather to the fiduciary relationship governing the trustee with respect to the trust property." *Hollis v. Lynch*, No. 15-10803, 2016 WL 3568063, at *4 (5th Cir. June 30, 2016) (citing *Ray Malooly Tr. v. Juhl*, 186 S.W.3d 568, 570 (Tex. 2006)).

Similarly, New York law, which the Truman 2013 SC3 Title Trust is governed by, also requires that parties sue a trustee in order to bring the trust into the suit. *Kirschbaum v. Elizabeth Ortman Tr. of 1977*, 3 Misc. 3d 1110(A), 787 N.Y.S.2d 678 (Sup. Ct. 2004) (unreported) (holding the "trustees as legal owners of the trust estate generally sue and are sued in their own capacity . . . .The trust itself does not have the capacity to sell the estate."); *see also U.S. Bank v. UBS Real Estate Sec. Inc.*, No. 12-CV-7322, 2016 WL 4690410, at *15 (S.D.N.Y. Sept. 6, 2016) (finding that Maryland law treated the *Americold* trust as a separate legal entity, the court held that the adjustable rate mortgage trust governed by New York law was "not analogous to the investment trust in *Americold*, and the citizenship of the Trusts' individual members [was] not relevant to determining diversity jurisdiction. In contrast to a Maryland real estate trust, the Trusts have no power to sue on their own behalves and the Trustee alone is responsible for the corpus of the Trusts.").

9

Because suing a trust in Texas and New York necessitates naming the trustee in the pleadings, then courts in these states must look to the substance of the complaint to determine the real party to the controversy. The court will now consider the different approaches that courts in the Fifth Circuit have taken to determine the real party to the controversy. For example, the court in *Transcontinental Realty* looked to the substance of the complaint and not just the caption and held that Wells Fargo Bank was "only a nominal or formal party suing on behalf of the Trust, which is the real and substantial party to the controversy with defendant." 2016 WL 3570648, at *2. The court granted the defendant's motion to dismiss for lack of subject matter jurisdiction where "[a] careful review of the complaint [made] it clear that Wells Fargo [was] only a nominal or formal party suing on behalf of the Trust, which [was] the real and substantial party to the controversy." *Id.*

After *Americold* was decided, a decision out of this court looked to the citizenship of the trustee to determine jurisdiction, but did not apply the *Americold* two-step analysis. *See Halley v. Deustche Bank Nat'l Tr. Co.*, CV H-15-1174, 2016 WL 3855872 (S.D. Tex. July 15, 2016) (Atlas, J.). In *Halley*, the court narrowly applied the *Navarro* holding without discussing whether the trustee was a real or nominal party to the controversy:

> Counter-Plaintiff Deutsche Bank is a trustee. The Supreme Court's recent *Americold* holding reaffirmed the holding in *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980), stating that "when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes." *Americold*, 136 S. Ct. at 1016. *See Navarro*, 446 U.S. at 465–66 (a trustee who is the real party in interest can invoke diversity jurisdiction based on its own citizenship rather than that of the trust's beneficial shareholders). As a national bank association, Deutshe Bank is considered a citizen of the state in which its main office is located. *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2016).

*Halley*, 2016 WL 3855872, at *1.

While the court agrees that *Wachovia* is the standard for determining the citizenship of a national bank, the *Halley* court did not delve into why it looked to the trustee instead of the trust to

10

assess jurisdiction. *Americold* explicitly states that "[s]o long as an entity is unincorporated, we apply our 'oft-repeated rule' that it possesses the citizenship of all its members. But neither this rule nor *Navarro* limits an entity's membership to its trustees just because the entity happens to call itself a trust." *Americold*, 136 S. Ct. at 1016. Therefore, a court must review the complaint and record to determine who are the real and substantial parties.

(b) Application

Bank of America and U.S. Bank both argue that by naming U.S. Bank in the suit, Guillen sued the trustee in its own capacity, and thus the named entity is the real party in interest. Dkts. 51, 53. "[The] mere fact that Mr. Guillen sued U.S. Bank as Trustee is all that matters in determining that U.S. Bank is the real party in interest." Dkt. 51 at 8. U.S. Bank further argues that under New York law, trusts cannot "sue or be sued in their own names; trustees, as legal owners, sue and are sued in their own capacity." Dkt. 51 at 4 (citing *Kirschbaum*, 787 N.Y.S.2d at 678). Therefore, U.S. Bank contends that naming the trustee in the suit means that the trustee's citizenship alone is determinative. Dkt. 51. Guillen, on the other hand, argues that he is suing U.S. Bank only in its capacity as trustee of the Truman 2013 SC3 Title Trust, and thus the real party to the controversy is the trust itself. Dkts. 1, 55. Throughout his complaint he refers to the trust as "US Bank," and claims he named the trustee in the complaint in order to bring the trust into the suit. Dkts. 1, 55.

The court agrees with the Defendants that in accordance with Texas and New York laws, suing a trust necessitates naming the trustee in the caption. *In re Ashton*, 266 S.W.3d at 604; *Hollis*, 2016 WL 3568063, at *4; *Springer v. U. S. Bank Nat'l Ass'n*, 2015 U.S. Dist. LEXIS 171734, *4 n.1 (S.D.N.Y. Dec. 23, 2015) ("The [complaint] names the  [trust] as a defendant, but under New York law, a trust cannot sue or be sued, and suits must be brought by or against the trustee.").

Nevertheless, while the named party in the caption of a case identifies the party, the Defendants must demonstrate that complete diversity exists based on the names listed in the pleadings <u>and</u> in the complaint itself. *Juarez*, 2016 WL 3906296 at *3; *Transcon. Realty*, 2016 WL 3570648, at *2. "Courts are empowered to 'look to the substance of the complaint to see whose conduct is the subject of the claim and against whom the action is alleged.'" *Juarez*, 2016 WL 3906296, at *3 (citing *Transcon. Realty*, 2016 WL 3570648 at *2). Looking beyond the mere caption of the suit, the court finds that Guillen's original petition treats the trust as the real and substantial party to the controversy, because the trust "apparently contains at least the piece of real estate at issue in this case." Dkts. 1, 39. Similar to *Juarez*, where the plaintiff alleged in his complaint that "the trust itself wrongfully foreclosed on [the plaintiff's] property," Guillen alleges in his complaint that U.S. Bank is the "purported Trustee for the *securitized trust that purchased* plaintiff's home at foreclosure." *Id.*; Dkt. 1, Ex. 1 at 8 (emphasis added). Furthermore, the Pooling Agreement identifies U.S. Bank as a "national banking association, not in its individual capacity, but solely as trustee." Dkt. 52. Because the Pooling Agreement specifically describes that U.S. Bank is not acting in its individual capacity and Guillen's complaint alleges the trust is the entity that foreclosed on his property, the court finds that the trust is the real party to the controversy. Accordingly, the court will look to the trust itself when determining jurisdiction.

3. Traditional trust vs. business entity or unincorporated association

After determining that a trust is the real party to the controversy, the next step in the analysis is to determine whether the trust is a traditional trust (where one need only look to the trustee for citizenship) or a business entity (where one must look to all members of the "trust" to determine citizenship). *Americold*, 136 S. Ct. at 1012; *Swoboda v. Ocwen Loan Servicing*, No. CV H-16-2986 (S.D. Tex. Sept. 19, 2016) (Ellison, J.) ("The citizenship of a traditional trust is determined by the

citizenship of the trustee; an artificial entity trust, on the other hand, takes the citizenship of each of its members."); *see also Juarez*, 2016 WL 3906296, at *2; *Transcon. Realty*, 2016 WL 3570648, at *3.

(a) Legal Standard

In *Americold*, the Supreme Court distinguished the standards governing a "traditional" trust (a fiduciary relationship among multiple parties) from an "artificial entity" or an "unincorporated trust." 136 S. Ct. at 1015–16. The Court held that since Americold was not a corporation, its citizenship comprises of the citizenship of its members. *Americold*, 136 S. Ct. at 1015–16. (*"For a traditional trust, [] there is no need to determine its membership, as would be true if the trust, as an *entity*, were sued."); *cf. Deutsche Bank Nat'l Tr. Co. v. Ra Surasak Ketmayura*, No. CV A-14-931, 2015 WL 3899050, at *4 (W.D. Tex. June 11, 2015) (plaintiff bank was a corporation and trustee of a trust, therefore the trustee's citizenship controlled). But if the trust is a traditional trust that meets the standards in *Navarro*, then a court must look to the trustee's citizenship. *Americold*, 136 S. Ct. at 1015–16.

(b) Application

Whether the trust is a traditional trust requires the court to evaluate whether trustees have legal title to the trust assets, have the ability to invest those assets, and have the ability "to sue and be sued in their capacity as trustees." *Navarro*, 446 U.S. at 464–66. Here, the terms of the Pooling Agreement provide clarity on whether the Truman 2013 SC3 Title Trust is a traditional trust or a business trust.

In support that this is a traditional trust, U.S. Bank refers to provisions of the Pooling Agreement to demonstrate the trustee's responsibilities, such as: maintaining a bank account to distribute profits to beneficiaries (Securityholders), distributing said profits, providing reports to the

13

Securityholders, and having the authority to commence litigation to enforce defaulted loan agreements.  Dkt. 51 at 5.

Guillen counters that this is a business trust and that the court should look to the citizenship of the trust's members to determine jurisdiction.  Dkt. 55.  Unlike a traditional trust, he argues that the Pooling Agreement provides the Securityholders, by way of the trust's  Program Manager, the power to direct the trustee to dispose of assets and the power to direct the trustee to sue, including overriding the trustee's ability to sue—making it more like a business trust and less like a traditional trust.  Dkt. 55.  He contends that the Pooling Agreement specifically elects the Trust's status as a "Grantor Trust" which permit the "beneficiaries, *and not the trustee*," to control the disposition of the trust assets.  *Id.* at 6 (citing 26 U.S.C. §§ 671–79) (emphasis added).  He also provides additional cases in which members of the trusts had less power over the trustee than the Securityholders of the Truman SC3 Title Trust do, yet the Supreme Court held that those trusts were business trusts (unincorporated associations).[3]  Dkt. 55 at 10 (citing *Hecht v. Malley*, 265 U.S. 144, 147–49, 44 S. Ct. 462 (1924); *Morrissey v. Comm'r of Internal Revenue*, 296 U.S. 344, 347, 56 S. Ct. 289 (1935).

While U.S. Bank concedes that some powers are vested in the beneficiaries, it argues that these powers are limited compared to the powers the trustee has.  Dkt. 51.  "The beneficiaries of the trust, aside from possessing some extraordinary remedies in the event that the Trustee fails to properly act, are without power."  *Id.* at 9.  Compared to the beneficiaries in *Americold*, "the beneficiaries of this trust have no control over the Trust's assets; they do not administer the loans

---

[3] To support his argument that this is a business trust, Guillen presents another case in which U.S. Bank was a trustee for a mortgage-backed securities trust and U.S. Bank argued that it had only "ministerial and administrative tasks" and thus was not a traditional trust.  *Id.* (citing *Fed. Deposit Ins. Corp. v. U.S. Bank, N.A.*, No. 15-cv-6574-ALC (S.D.N.Y. filed Aug. 19, 2015) (Pl.'s Br.).  While this case may support his proposition, the court finds that U.S. Bank's filings that pertain to a trust governed by a different Pooling Services Agreement are inapplicable to the instant case.

that are in it; they do not cause assets to be added to the Trust or removed; and they do not hire or fire the Trustee." *Id.* (citing *Americold*, 163 S. Ct. at 1016).

On balance, the court finds that provisions of the Pooling Agreement indicate that the Securityholders may direct the Program Manager to override the trustee's remedial powers. Dkt. 52. For example, in Section 3.01, the Securityholders appoint the Program Manager to administer mortgage loans on their behalf and the trustee must receive written direction from the Program Manager prior to taking action. *Id.* Sections 6.01, 6.05, and 6.06 provide that while the trustee may bring suit for default, the Program Manager may waive any defaults; direct the time, method, and place of conducting any remedy available to the trustee; and initiate suit if the trustee refuses to do so. *Id.* Such overriding powers give the Securityholders more control of the trustee than the Certificateholders in *May* who only had the power to remove the trustee. 2016 U.S. Dist. LEXIS 128099, at *14. Accordingly, the court finds that the Truman 2013 SC3 Title Trust is a business trust or unincorporated entity.

### E. Removing party's burden to prove complete diversity

The court agrees with Guillen that the Truman 2013 SC3 Title Trust is a business trust and therefore Defendants must demonstrate the citizenship of the trust's members or beneficiaries to establish jurisdiction. Dkt. 55; *Americold*, 136 S. Ct. at 1012.

1. Legal Standard

Post-*Americold*, the burden is on the removing party to "classify the trust, establish its citizenship, and prove complete diversity." *Juarez*, 2016 WL 3906296, at *4 (remanding because defendant did not prove diversity); *see Swoboda*, No. CV H-16-2986, at *3 (same); *Daimler Tr. v. Prestige Annapolis, LLC*, No. CV ELH-16-544, 2016 WL 3162817, at *16 (D. Md. June 7, 2016) ("It is elementary that the burden is on the party asserting jurisdiction to demonstrate that

15

jurisdiction does, in fact, exist.") ( quoting *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010)).

If a trust is a business trust or unincorporated association, the removing party must establish jurisdiction of its members. *Swoboda*, No. CV H-16-2986, at *9. The court finds the district court analysis and decision in *Swoboda* particularly persuasive. *Id.* Like in the instant case, the citizenship of U.S. Bank, by virtue of its role as trustee, was also at issue. *Id.*

> As *Americold* explains, any unincorporated entity must establish the citizenship of all its members for purposes of diversity jurisdiction. And, where Wells Fargo, as the corporate trustee of an unincorporated entity, has not truly filed suit in its own name and on its own behalf, Wells Fargo was required—and has failed—to establish the citizenship of the Trust by "distinctly and affirmatively" alleging the citizenship of each of the Trust's members.

*Id.* (citing *Transcon. Realty*, 2016 WL 3570648, at *2).

The *Swoboda* court remanded a mortgage foreclosure case when defendant U.S. Bank relied on its own citizenship for purposes of jurisdiction and did not present evidence of the trust's members. *Id.* The plaintiff argued that the court should remand the case because after *Americold*, the "citizenship of the trustee is no longer the controlling criterion for citizenship of a trust for diversity purposes" and the defendants failed to provide the citizenship of the trust's members. *Id.* at *3. The defendants acknowledged the trust was the real and substantial party to the suit and made no claims that the trust was a nominal party. *Id.* at *3 n.2; *see also U.S. Bank Tr., NA. v. Dupre*, No. 6:15-CV-0558, 2016 WL 5107123, at *2 (N.D.N.Y Sept. 9, 2016) (dismissing a foreclosure case for lack of subject matter jurisdiction when U.S. Bank Trust was ordered to include its own articles of association or other comparative evidence of the location of its main office and failed to do so and did not address the court's concerns regarding the citizenship of its co-defendant bank).

16

2. Application

Because Guillen sued U.S. Bank solely in its capacity as trustee, the *Americold* holding requires that the Defendants demonstrate the citizenship of the trust's members (Securityholders). *Id.* Like the defendants in *Swodoba, Juarez,* and *Transcontinental Realty*, the Defendants in this case have the burden to establish complete diversity, and they failed to do so. While defendants Bank of America, Rushmore, and MERS met their burden of establishing their citizenship in their pleading, (Dkts. 1, 13, 42), the record does not show that U.S. Bank is a corporation or that the trust was a nominal party to the controversy. As an unincorporated entity, U.S. Bank failed to demonstrate the citizenship of the trust's members in its notice of removal, and thus did not meet its burden to establish complete diversity. Accordingly, this court does not have subject matter jurisdiction.

### III. CONCLUSION

Upon reconsideration of the court's jurisdiction in light of *Americold*, the court finds that it does not have jurisdiction. The case will be returned to the Fifth Circuit for appropriate action.

Signed at Houston, Texas on December 6, 2016.

_____
Gray H. Miller
United States District Judge